IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

ROSCHELL H. BROOKE                                                    PLAINTIFF


          v.                              CASE NO.        11-3028


MICHAEL J. ASTRUE, Commissioner
of Social Security Administration                                    DEFENDANT

### MEMORANDUM OPINION

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for supplemental security income ("SSI") under Title XVI of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

I.      **Procedural Background:**

The plaintiff filed her application for SSI on June 10, 2008 (T. 123), alleging an onset date of March 1, 2007, due to plaintiff's Seizures/petit mal epilepsy (T. 147). Plaintiff's applications were denied initially and on reconsideration. Plaintiff then requested an administrative hearing, which was held on April 30, 2009. Plaintiff was present and un-represented.

At the time of the administrative hearing, plaintiff was 35 years of age (T. 32) and possessed a High School Education and an Associate's Degree in office assistance (T. 33). The

Plaintiff had past relevant work ("PRW") experience as a cashier, fry cook and a waitress.  (T. T. 34-37).

On June 4, 2009, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's seizure disorder and anxiety disorder did not meet or equal any Appendix 1 listing.  T. T. 75).  The ALJ found that plaintiff maintained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations:  She cannot do sustained driving as a part of work duties.  She cannot climb scaffolds, ladders, or ropes and cannot be around unprotected heights or dangerous equipment. From a mental stand point , she is able to perform repetitive routine work with superficial contact incidental to work with public and co-workers.  Such work has non-complex simple instructions which are learned by rote with few variables and require little judgment and supervision is concrete, direct and specific ( T. 77).  With the assistance of a vocational expert, the ALJ then determined Plaintiff could perform the functions of housekeeping.  T. 80.

## II.    Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision.  *Id.*  "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision."  *Id.*  As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome,

or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683

-3-

F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**III.** **Discussion**:

    **A.  Step Three**

    The Plaintiff contends that the ALJ committed error at step three of the sequential process. Step Three requires the ALJ to determine whether the impairment(s) meet or equal an impairment in the listings.  *See King v. Astrue*, 564 F. 3d 978 (8ᵗʰ Cir. 2009).

    The ALJ found that the Plaintiff had sever impairments of seizure disorder and anxiety disorder but that she did not have an impairment that met or medically equaled one of the listed impairments. (T. 75).

    The ALJ spent one and one half pages discussing why the Plaintiff did not meet the listing for any mental impairment but did not spend one sentence discussing why she did not meet the listing for epilepsy.  The section 11.03 Epilepsy listing states:

> § 11.03 Epilepsy – minor motor seizures (petit mal, psychomotor, or focal), documented by EEG and by detailed description of a typical seizure pattern, including all associated phenomena; *occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment*. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.  20 CFR 404, Appendix 1 to Subpart P–Listing of Impairments.

    As the Defendant points out the Eighth Circuit has consistently held that although it is preferable that ALJ's address a specific listing, failure to do so is not reversible error if the record supports the overall conclusion. *Pepper o/b/o Gardner v. Barnhart*, 342 F.3d 853, 855 (8th Cir. 2003).  The court finds that the record does support the ALJ's conclusions.

    The burden of proof is on the plaintiff to establish that his or her impairment meets or equals a listing. *See Sullivan v. Zebley*, 493 U.S. 521, 530-31, 110 S.Ct. 885, 107 L.Ed.2d 967

(1990). To meet a listing, an impairment must meet all of the listing's specified criteria. Id. at 530, 110 S.Ct. 885 ("An impairment that manifests only some of these criteria, no matter how severely, does not qualify."); *Johnson v. Barnhart* 390 F.3d 1067, 1070 (C.A.8 (Ark.),2004).

The factual question concerning whether the Plaintiff met the listing requirements will come down to the frequency of her seizures.

The Plaintiff was being treated by Dr. Paul Tucker in 2004, who referred her to Dr. Bruce D. Robbins, M.D. for an evaluation concerning her epilepsy. (T. 279).  Dr. Robbins was a Board Certified Neurologist. (Id.). Dr. Robbins noted the Plaintiff informed him in 2004 that her last seizure was "four years ago while pregnant". (Id.). When the Plaintiff saw Dr. Robbins in November 2005 she informed him that she did not have any spell that she was aware of in the last year. She was on Depakote[1] 250 mg twice a day (T. 278). Dr. Robbins performed an EEG on July 27, 2006 and found a "questionable abnormal EEG secondary to spiked slow wave activity associated with hyperventilation" (T. 282).  In August 2006 the Plaintiff told Dr. Robbins that she had not had any further spells. Dr. Robbins changed her medication to Topiramate[2] 25 mg twice a day. (T. 277). In October 2006 Dr. Robbins changed the Plaintiff's medication to Tegretol 100 mg three times per day because the Plaintiff could not afford the Topiramate. (T. 276). In April 2007 the Plaintiff reported to Dr. Robbins that she had not had any further spells. (T. 275).  On June 14, 2007 the Plaintiff was seen by Dr. Robbins who noted that she was "doing well".  There were no reports of any seizures in Dr. Robbins report.

---

[1] Depakote ER (divalproex sodium) sodium affects chemicals in the body that may be involved in causing seizures.

[2] Topiramate is a seizure medication, also called an anticonvulsant.

The Plaintiff evidently traveled from Arkansas to Louisiana to visit family in July 2007. On July 2, 2007 the Plaintiff was treated for a seizure at the North Oaks Medical Center ER (T. 219). The Plaintiff represented to the triage nurse that this was her "Second szs since March 18, 2007" however there is no medical documentation of this seizure nor did she inform her treating physician, Dr. Robbins, either in April or June that she had such an event. Dr. Robbins notes are to the contrary and the Plaintiff informed him that she had not had any seizures.

Dr. Patricia S. Cook, M.D. stated in July 2007 that she reevaluated the Plaintiff "whom I have followed for many years a s child when she had absence seizures[3]" (T. 244). The Plaintiff related to Dr. Cook that she had a seizure on March 18, 2007, and May (neither were reported to Dr. Robbins) and on July 2, 2007 (T. 245). Plaintiff was seen again for a seizure at the North Oaks Medical Center ER on August 15, 2007 (T. 216) but she left without treatment (T. 215). On August 15, 2007 Dr. Cook placed the Plaintiff back on Depakote ER (T. 243). On September 24, 2007 Dr. Cook noted that the Plaintiff was "doing fine" and she was off Tegretol (T. 242). On October 27, 2007 the Plaintiff wanted to resume driving. Dr. Cook's note state that the Plaintiff's last seizure was in August while she was still on Tegretol and that she had been seizure free since back on Depakote and that if she remained seizure free she could resume

---

[3] Absence seizure — also known as petit mal — involves a brief, sudden lapse of consciousness. Absence seizures are more common in children than adults. Someone having an absence seizure may look like he or she is staring into space for a few seconds.

Compared with other types of epileptic seizures, absence seizures appear mild. But they can be dangerous. Children with a history of absence seizure must be supervised carefully while swimming or bathing because of the danger of drowning. Teens and adults may be restricted from driving and other potentially hazardous activities.

Absence seizures usually can be controlled with anti-seizure medications. Some children who have absence seizures also have grand mal seizures. Many children outgrow absence seizures in their teen years. See www.mayoclinic.com

driving. (T. 242). In February 2008 the Plaintiff had an EEG performed by Dr. Cook. The Impression was an abnormal EEG with paroxysmal[4] bursts, maximum anteriorly but Dr. Cook noted that there were no "clinical behavioral changes suggestive of seizures occurred during any of these parozysmal abnormal discharges but such activity can be associated with clinical seizure disorders..." (T. 238).

The Disability Report, completed by the Plaintiff after June 10, 2008, states that she "had six seizures between march of 2007 through 08/2007" and that she had "not had any seizures since that time" and she was unable to work since July 2, 2007 (T. 147).

The Plaintiff testified that she had a seizure July 2, 2007. The ALJ then stated:

Q. And have you had any since then?

A. Not any like I was having in that four or five-month period that I had. (T. 56)

The Plaintiff went on to state that "if I get too worked up or anything, it has caused me to have little seizures. I mean nothing that would put in the hospital like the six that did back in 2007". (T. 58). The Plaintiff then went on to testified that she could have three or four a day of the minor seizures. (Id.)

When the Plaintiff testified that she would have a number of these "little seizures" every day the ALJ then turned to question the husband. Mr. Brook testified that during these seizures his wife's eyes will just blink and then she forgets what they were talking about. (T. 59). The ALJ then tried to exact information from Mr. Brooke concerning the number of times these little

---

[4] Paroxysmal attacks are short, frequent and stereotyped symptoms that can be observed in various clinical conditions. They are usually associated with Multiple Sclerosis, but they may also be observed in other disorders such as encephalitis, head trauma, stroke, asthma, trigeminal neuralgia, breath-holding spells, epilepsy and Behçet's disease. It has also been noted as a symptom of Gratification disorder in children.

seizures would happen and he responded "pretty often".  When the ALJ explained to Mr. Brooke that was not precise enough information he testified that it would happen 5 to 10 times every week. (T. 60).

The ALJ made no factual findings at step three concerning whether the Plaintiff's epilepsy met the listing requirement.  *See Chunn v. Barnhart*, 397 F.3d 667, 672 (8th Cir.2005) (remanding because the ALJ's factual findings were insufficient for meaningful appellate review); *Pettit v. Apfel*, 218 F.3d 901, 903-04 (8th Cir.2000) (same). The ALJ did make findings at step five, however,  concerning the Plaintiff's Epilepsy and also discounted the testimony of her husband. (T. 79).

Based upon the record as a whole and based upon the ALJ's findings at step five the court finds that the ALJ did not commit any error in failing to set forth specific findings at step three.

### B.  Failure to Develop the Record

The Plaintiff next contends that the ALJ committed error by failing to develop the record regarding her complaints of back pain. (ECF No. 8, p. 10).

The ALJ has a duty to fully and fairly develop the record.  *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995)(ALJ must fully and fairly develop the record so that a just determination of disability may be made). The ALJ is not required to act as Plaintiff's counsel. *See Clark v. Shalala*, 28 F.3d 828, 830 (8th Cir. 1994) (ALJ not required to function as claimant's substitute counsel, but only to develop a reasonably complete record); *see also Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995) ("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial").

The Plaintiff did not allege back pain as a basis for her disability (T. 147) but only

-8-

mentioned it in a Pain Assessment form (T. 170).  The fact that the plaintiff did not allege back pain as a basis for her disability in her application for disability benefits is significant, even if the evidence of back pain was later developed. See *Smith v. Shalala*, 987 F.2d 1371, 1375 (8th Cir.1993); *Dunahoo v. Apfel*, 241, F. 3d 1033, 1039 (8th Cir. 2001).

It is also noted that the Plaintiff sought no treatment for her back pain. *See* Pl.'s Br. at 11. *See Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995) (while not dispositive, a failure to seek treatment may indicate the relative seriousness of a medical problem).  Plaintiff's attempts to excuse her failure to pursue more aggressive treatment cannot be wholly excused due to his claims of financial hardship. *See Murphy v. Sullivan*, 953 F.2d 383, 386-87 (8th Cir.1992) (rejecting claim of financial hardship where there was no evidence that claimant attempted to obtain low cost medical treatment or that claimant had been denied care because of her poverty); *Hutsell v. Sullivan*, 892 F.2d 747, 750 n. 2 (8th Cir.1989) (noting that "lack of means to pay for medical services does not ipso facto preclude the Secretary from considering the failure to seek medical attention in credibility determinations.") (internal quotations omitted). *Tate v. Apfel* 167 F.3d 1191, 1197 (C.A.8 (Ark.),1999).  In this case it is especially true since the Plaintiff obtained treatment for her Epilepsy on a consistent basis.

Also the court notes that whatever pain was associated with the Plaintiff back it was treated with over the counter medication. (T. 171). *See Hepp v. Astrue*, 511 F.3d 798, 807 (8th Cir. 2008) (moderate, over-the-counter medication for pain does not support allegations of disabling pain).  "The ALJ may properly consider both the claimant's willingness to submit to treatment and the type of medication prescribed in order to determine the sincerity of the claimant's allegations of pain." *Thomas v. Sullivan*, 928 F.2d 255, 259 (8th Cir.1991) (citations

omitted); *Gray v. Apfel*  192 F.3d 799, 804 (C.A.8 (S.D.),1999)

Although the ALJ is required to fairly and fully develop the record in a social security

disability benefits case, he is not obliged to investigate a claim not presented at time of the

application for benefits and not offered at hearing as a basis for disability. *Halverson v. Astrue*

600 F.3d 922 (C.A.8 (Ark.), 2010).  The ALJ committed no error in failing to further develop the

record concerning the Plaintiff's allegations of back pain.

### C.  RFC

The Plaintiff next contends that the ALJ committed error in her RFC assessment (ECF

No. 8, p. 12).

RFC is the most a person can do despite that person's limitations. 20 C.F.R. §

404.1545(a)(1).  It is defined as the individual's maximum remaining ability to do sustained

work activity in an ordinary work setting "on a regular and continuing basis." 20 C.F.R. §§

404.1545 and 416.945; Social Security Ruling (SSR) 96-8p (1996). It is assessed using all

relevant evidence in the record.  *Id*.  This includes medical records, observations of treating

physicians and others, and the claimant's own descriptions of her limitations.  *Guilliams v.

Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th

Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the

assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth

Circuit has held that a "claimant's residual functional capacity is a medical question."  *Lauer v.

Apfel,* 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a

claimant's RFC must be supported by medical evidence that addresses the claimant's ability to

function in the workplace."  *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

-10-

Nevertheless, in evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively. *Cox v. Astrue*, 495 F. 3d 614 at 619 *citing  Lauer v. Apfel*, 245 F.3d 700 at 704; *Dykes v. Apfel*, 223 F.3d 865, 866 (8th Cir.2000) (per curiam) ("To the extent [claimant] is arguing that residual functional capacity may be proved only by medical evidence, we disagree."). Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner.*620 20 C.F.R. §§ 416.927(e)(2), 416.946 (2006).

The Plaintiff contends that while she "has not experienced a major/grand-mal seizure since August 2007, she does continue to experience petit-mal seizures on a consistent basis that are characterized by a loss of awareness, stuttering, and eye-fluttering. (Tr. 58-61, 182) Her husband says she has at least 5-10 of these smaller seizures per week (Tr. 60) (ECF No. 8, p. 13).

As the court has pointed out above there is no medical documentation for the "little seizures" which the Plaintiff complained of at the hearing. If the Plaintiff was having such seizures she failed to report them to any treating physician. In general, the failure to obtain follow-up treatment indicates that a person's condition may not be disabling or may not be as serious as alleged. *See Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir.1995).

By all medical accounts the Plaintiff had done well on Depakote and been seizure free for many years. (T. 244; 279). Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits. *See, e.g., Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir.2004); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir.1987); see also *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir.1983) (affirming a denial of benefits and noting that the claimant's impairments were responsive to medication). *Warre v. Commissioner of Social*

*Sec. Admin*. 439 F.3d 1001, 1006 (C.A.9 (Or.),2006).

Dr. Robbins took the Plaintiff off of Depakote and place her on Topiramate for a short period of time beginning in August 2006 (T. 277) and then switched her to Topamax[5] in October 2006 because of cost. (T. 276). The Plaintiff told Dr. Robbins that she had not had any spells in April 2007 but when she went to Louisiana for a visit she had an incident on July 2, 2007. (T. 218). As a result she visited her long time treating physician Dr. Cook on July 20, 2007. Dr. Cook noted that the Plaintiff told her that when she was switched to Topamax and Tegretol that after about three weeks "she started having these weird episodes with lapses of awareness, stopping in the middle of her sentence, and that these were occurring 2-3 times per day". (T. 244). There is no evidence that Dr. Cook associated these incidences as seizures. There is evidence that Dr. Cook associated these incidents with the change in medication because Dr. Cook placed the Plaintiff back on Depokote in August 2007 (T. 243). There is no evidence in the medical records that the Plaintiff suffered any seizures after being placed back on Depokote. Dr. Cook's records reflect that since the Plaintiff was "seizure free" she allowed her to resume driving in November 2007. (T. 241-242). When the Plaintiff filed her Disability Report in June 2008 she stated that she had not had any seizures since August 2007 (T. 147, 181) and she was still driving in June 2008. (T. 175). The Plaintiff saw Dr. Cook again in July 2008 and the doctor's report states that the Plaintiff "has been taking the Depakote ER 250 mg in the morning and 500 mg at night and has remained *seizure free* since the end of August 2007. (T. 285).

The ALJ discounted the testimony of the Plaintiff's husband because of financial interest and significant inconsistencies. (T. 79). Mr. Brooke's Statement claimed that he had seen his

---

[5] Topamax (topiramate) is a seizure medication, also called an anticonvulsant.

-12-

wife's seizure in July and August 2007 (T. 182) but according to Dr. Cook's report in July the Plaintiff was in Louisiana without her husband (T. 246). Mr. Brooke also testified that he was unemployed at the time of the hearing. (T. 60). An ALJ, when assessing witness credibility, may consider whether a witness will gain financially by the claimant's receipt of benefits. See 862 F.2d 176, 180 (8th Cir.1988); *see also Ownbey v. Shalala*, 5 F.3d 342, 345 (8th Cir.1993); *Buckner v. Apfel*  213 F.3d 1006, 1013 (C.A.8 (Ark.),2000).

Likewise the ALJ discounted the testimony of the Plaintiff concerning her "little seizures" and the contention that she had these types of seizures three or four times a day. (T. 58).  The ALJ considered the "little seizures" in a proposed hypothetical to the VE (T. 66) and the VE testified that the Plaintiff would not be able to sustain employment with those limitations. (Id.). Since the ALJ did not incorporate those limitations into the RFC it is clear that the ALJ did not believe that the Plaintiff's assertions concerning her "little seizures" was credible. The court will defer to the ALJ's determinations regarding the credibility of witnesses so long as such determinations are supported by good reasons and substantial evidence. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir.2005).  For the reasons stated above the court finds that there is good reason and substantial evidence to support the ALJ's decision to discount the Plaintiff's assertions concerning her "little seizures".

**IV.    Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision, and thus the decision should be affirmed.  The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

-13-

Dated  this July 18, 2012.


*/s/ J. Marschewski*
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE